# IN THE COURT OF APPEALS OF IOWA

No. 21-0276
Filed July 20, 2022

**IN THE INTEREST OF D.R.,**
**Minor Child.**

**D.R., Minor Child.**
    Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A juvenile appeals an order for restitution in a delinquency proceeding. **AFFIRMED**.

Lynnette M. Lindgren of Faulkner, Broerman & Lindgren Law Firm, Oskaloosa, for minor child.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

D.R. stole a canvas bag filled with containers of fishing tackle from the bed of a stranger's pickup truck. D.R. was charged as a juvenile. He and the State eventually reached a plea agreement. Pursuant to the agreement, the juvenile pleaded guilty to committing a delinquent act which, if he were an adult, would be attempted burglary in the third degree. *See* Iowa Code §§ 713.2, .6B (2020) (defining attempted burglary, establishing the elements of attempted burglary in the third degree, and establishing the crime as a serious misdemeanor when an unoccupied motor vehicle is involved). On behalf of the victim, the State submitted a claim for restitution in the amount of $1141.51. The juvenile challenged this amount. Following a hearing, the juvenile court ordered the juvenile to pay restitution to the victim in the amount of $931.51. The juvenile appeals.

## I. Issue on Appeal

To the juvenile court, the juvenile challenged the quantity of tackle the victim claims was missing, alleging he had returned all items with the exception of one uncontested item—a stun gun—that the juvenile acknowledged he did not return and for which he had already paid restitution for an agreed amount. He also challenged the value placed on the missing items. On appeal, the juvenile has abandoned any challenge to the quantity of items. He focuses exclusively on the value placed on them.

## II. Standard of Review

We review juvenile delinquency restitution orders for errors at law. *In re T.L.*, No. 19-0770, 2020 WL 1879587, at *2 (Iowa Ct. App. Apr. 15, 2020). This means we will affirm unless the juvenile court's finding is not supported by

substantial evidence or the court has not applied the law properly. *Id.* Substantial evidence is evidence that a reasonable mind would accept as adequate to reach a conclusion. *Id.*

## III.    Restitution Principles

Chapter 232 authorizes imposing a restitution obligation on a juvenile who has committed a delinquent act. *See* Iowa Code §§ 232.29(2) (permitting restitution with an informal adjustment), .46(1)(a)(4) (permitting restitution with a consent decree), .52(2)(a)(2) (permitting restitution as part of disposition following adjudication of delinquency). We apply the restitution provisions of chapter 910 in juvenile delinquency proceedings. *See id.* § 915.100(1), (2)(b) (giving a victim a right to recover pecuniary damages under chapter 910 and stating that such right includes having a judge "require a juvenile who has been found to have committed a delinquent act to compensate the victim of that act for losses due to the act."); *see also T.L.*, 2020 WL 1879587, at *2 (applying chapter 910 to juvenile delinquency proceedings); *In re J.S.*, No. 13-0174, 2013 WL 5291959, at *1 (Iowa Ct. App. Sept. 18, 2013) (same).

Restitution serves the twin purposes of protecting the public by compensating victims and rehabilitating offenders by making them answer directly for the consequences of their actions. *State v. Waigand*, 953 N.W.2d 689, 694 (Iowa 2021). The State bears the burden of proving the amount owed to a victim by a preponderance of the evidence. *Id.* The amount of restitution owed to a victim is the same amount, not otherwise paid by insurance, that the "victim could recover against the offender in a civil action arising out of the same facts or events, except punitive damages and damages for pain, suffering, mental anguish, and loss of

consortium." *State v. Roache*, 920 N.W.2d 93, 100 (Iowa 2018) (emphasis omitted) (quoting Iowa Code section 910.1(3)—now section 910.1(6)—which defines "pecuniary damages" for purposes of chapter 910). Because statutory restitution is based on amounts recoverable in a civil action, we apply civil-action principles to calculate the amount of restitution owed. *State v. Shears*, 920 N.W.2d 527, 536 (Iowa 2018).

## IV. Analysis

Having reviewed the authorities that establish that we apply civil-action standards to determine the amount of restitution, we must determine what those standards are in this case. As the items at issue have not been returned to the victim, we are dealing with determining a damage amount to replace the items. In an effort to meet its burden of proof, the State introduced the testimony of the victim. The victim testified about the number and nature of the stolen, unreturned items. He also placed a value on those items. He did so by visiting both online and brick-and-mortar retailers to determine the prices the retailers charged for the missing items. In other words, the State presented evidence of replacement cost. No additional or competing evidence as to value was presented.

The State urges us to use Iowa Code section 714.3(1) to determine the restitution amount. That section states that "[t]he value of property is its highest value by any reasonable standard at the time that it is stolen. Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value." Iowa Code § 714.3(1). Based on this section, the State argues that the evidence presented via the victim's testimony as to retail replacement cost is the proper measure of restitution, because the victim is entitled

to recover the "highest value by any reasonable standard," which includes replacement value. *See id.* In contrast, the juvenile argues that restitution is limited to the actual value of the property, not the cost to replace it. The juvenile asserts that, because the stolen items were used, their actual value was significantly lower than their replacement cost. The juvenile asserts the juvenile court erred by relying on replacement cost to set the restitution amount.

As to the dispute over which standard to apply, we disagree with the State. Iowa Code section 714.3 is found in the theft chapter of the Iowa Code (chapter 714). That chapter defines the degree of theft by the value of the property stolen, and the degree of theft sets the level of the offense. *See id.* § 714.2 (establishing the degrees of theft (i.e., first through fifth degree) by the value of the property stolen and setting the level of crime for each degree of theft (i.e., from class "C" felony for theft in the first degree down to simple misdemeanor for theft in the fifth degree)). The purpose of section 714.3 is to set parameters on establishing the value of stolen property in order to determine the degree of theft. There is nothing in section 714.3 suggesting that it applies to determining restitution under chapter 910. Likewise, there is nothing in chapter 910 suggesting that section 714.3 applies in determining the amount of restitution owed to a victim. Besides there being no statutory authority backing the State's position, the State also cites no case law that does so. As we see no basis for using section 714.3 to determine restitution under chapter 910, we decline to do so. Instead, we apply the general rule applicable to civil actions. "The general rule in Iowa . . . for replacement [of property] is the fair and reasonable cost of replacement . . . , but not to exceed the value of the property immediately prior to the loss . . . ." *Roache*, 920 N.W.2d at

106 (alteration in original) (quoting *State v. Urbanek*, 177 N.W.2d 14, 16 (Iowa 1970)).

As noted, the State's proof consisted of the victim's testimony regarding replacement cost of the stolen items. The juvenile court correctly cited the general rule cited above and then applied it. In doing so, the court rejected the victim's claim for $150 to replace the canvas bag that was returned in damaged condition, noting that it was very old and of negligible market value.[1] The court accepted the victim's testimony and used the retail-replacement-cost figures to value the remaining items.

Keeping in mind our standard of review, which requires us to affirm if the juvenile court's findings are supported by substantial evidence, we find no error in the juvenile court's ruling. The victim testified that the list of items for which he was making a claim erred on the low side, meaning there were more missing items than the victim listed. Further, as previously noted, there was no evidence challenging, rebutting, or disputing the value placed on the items by the victim. There was also no evidence presented that there was an existing market for the types of used items that were stolen or what the value of those items would be in that market. *See Britven v. Occidental Ins. Co.*, 13 N.W.2d 791, 793–94 (Iowa 1944) (noting that actual value is not generally determined by market value when there is no recognized market value, such as with household goods, and noting

---

[1] The juvenile court's rejection of this $150 of the victim's claim, coupled with a reduction for the value of the stun gun that the parties agreed was worth $60 and for which the juvenile had already paid restitution, accounts for the difference between the amount claimed by the victim ($1141.50) and the amount awarded by the juvenile court ($931.51).

that replacement cost is frequently used to value such items); *see also* 22 Am. Jur. 2d *Damages* § 298 (May 2022 update) ("The cost of repairs may be a more accurate method of measuring damages where the property damaged is not generally bought and sold on the open market, and the concept of market value is difficult to apply.  Thus, damages are sometimes measured by the cost of repairing such property if it is capable of being repaired.  If the item is a total loss, the cost of replacement or reproduction may be awarded." (footnotes omitted)); Brendan de R. O'Byrne, Annotation, *Valuation of Wearing Apparel or Household Goods Kept by Owner for Personal Use, in Action for Loss or Conversion of, or Injury to, such Property*, 34 A.L.R.3d 816, § 6 (1970) ("In several cases the courts have referred to replacement cost as a factor properly considered in assessing damages for loss of or injury to such personal property as wearing apparel or household goods kept for personal use.").  Based on these considerations, and considering that "[a] damage award 'need only bear a reasonable relationship to the loss suffered to be sustained,'" the juvenile court's determination of the amount of restitution is supported by substantial evidence.  *Papenheim v. Lovell*, 530 N.W.2d 668, 673 (Iowa 1995) (quoting *Jackson v. Roger*, 507 N.W.2d 585, 589 (Iowa Ct. App. 1993)).  Accordingly, we affirm.

**AFFIRMED.**