# IN THE COURT OF APPEALS OF IOWA

No. 19-0622
Filed April 1, 2020

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**DESIREE K. TRENT,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Lee (South) County, John M. Wright, Judge.

　　　The defendant challenges the sentence imposed after she pled guilty to forgery. **SENTENCE AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

　　　Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

　　　Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Desiree Trent pled guilty to one count of forgery.[1]  *See* Iowa Code § 715A.2(1)(b), (c) (2017).  Trent was sentenced to a term of incarceration not to exceed five years and ordered to pay $1569.08 in victim restitution.  On appeal, Trent argues the district court considered an improper factor in deciding her sentence and erred in imposing the amount of victim restitution she owed.

**I.  Sentencing Factors.**  Trent pled guilty to one count of forgery.  The State recommended and Trent requested that she receive a deferred judgment.  The preparer of the presentence investigation (PSI) report recommended the court enter judgment but suspend the sentence and place Trent on probation.  The court considered these recommendations but ultimately sentenced Trent to a term of incarceration not to exceed five years, stating:

> Well, Ms. Trent, the court has taken into consideration all the sentencing provisions provided for in the Iowa Code.  The following sentence is based upon my judgment of what will provide maximum opportunity for your rehabilitation and at the same time protect the community from further offenses by you and others.
> I specifically take into consideration the entire [PSI] report, as modified, concerning your employment.
> I take into consideration that you're 26 years of age.  You are not a youthful offender.  You have a criminal history of convictions.  And as your attorney pointed out, you were granted a deferred judgment, and that deferred judgment was eventually revoked and you did some prison time.  So we tried some rehabilitation through that method.
> You've been convicted of a drug charge in the past, a theft charge, certainly offenses that give this court some concern that rehabilitation has not yet worked.

---

[1] Amended Iowa Code section 814.6(1)(a)(3) (2019) does not affect Trent's right to appeal following her guilty plea; the judgment and sentence here were filed on March 18, 2019.  *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019) ("On our review, we hold Iowa Code sections 814.6 and 814.7, as amended, do not apply to a direct appeal from a judgment and sentence entered before July 1, 2019.").

I note now that you have part-time employment. You do childcare for your sister. You do have your GED. However, you have a poor work history. When I look at the section of the PSI report that discusses that, for example, you worked one day in June of last year and you quit without notice. You worked approximately two months in 2017. You worked about six days in 2015. You worked about two months in 2013, and about a month at another employer in 2013. So you've never really tried to hold down a job. It shows you have a poor work history, as I said.

You owe substantial fines. You have no positive family support that would help you on probation. You also told the person who wrote this report that you do not have a concern with drug addiction. You were introduced to your drug of choice, methamphetamine, when you were 15 years old. And you indicated that you used methamphetamine about a month before this interview. So after you pled guilty and were awaiting sentencing, you were still using methamphetamine. You just don't get it.

There have been several attempts at the local level to rehabilitate you, including ADDS substance abuse evaluation and continuing care. None of this has taken hold.

I take into consideration the statements made by your attorney and the County Attorney, and the nature of the offense committed.

It is therefore the judgment of this Court that you be and are hereby convicted of forgery, in violation of Iowa Code sections 715A.2(1)(b) or (c) and 715A.2(2)(a)(3).

It is further the judgment of this court that you be and are hereby committed to the custody of the Director of the Iowa Department of Corrections for a term not to exceed five years with credit for time served.

Here, Trent asserts the court improperly relied on her "poor work history" and that she "owed substantial fines" in deciding to impose a prison term. "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors." *State v. Gonzalez*, 582 N.W.2d 515, 516 (Iowa 1998).

Trent argues the court's reliance on her work history and unpaid fines is improper because jailing someone for their inability to pay a fine violates the Equal

Protection Clause. Trent relies on *State v. Snyder*, 203 N.W.2d 280, 287 (Iowa 1972), for this proposition. In *Snyder*, the court imposed a suspended jail sentence and a $300 fine for the defendant's conviction of operating while intoxicated. 203 N.W.2d at 282. The court directed that if the defendant did not pay the $300 fine, he should be placed in jail to "serve out the fine at the rate of $5.00 per day in default of payment." *Id.* at 286. The court was aware the defendant was indigent at the time. *Id.* The supreme court was asked to determine "whether the likely imprisonment of this convicted defendant solely because he cannot make immediate payment of a fine by reason of indigency is a deprivation of his liberty in violation of rights secured to him by the equal protection clause of Amendment 14 of the United States Constitution." *Id.* at 286–87. The court concluded,

> There can be no dispute that the operative effect of the Iowa statute as applied by the trial court in sentencing [the defendant] is to create two classes of convicted defendants indistinguishable from each other except that one is able to pay the fine and can avoid imprisonment, and the second cannot satisfy the fine and therefore cannot escape imprisonment.

*Id.* at 287. Because the State did not have a compelling interest that justified this "suspect classification," the supreme court reversed the defendant's sentence. *Id.* at 291–92.

But this case is not one where the court substituted a jail sentence for an unpaid fine. *See id.* at 290. The court considered Trent's employment history before deciding whether to defer judgment, defer sentence, or suspend the sentence, as the court is statutorily required to do. *See* Iowa Code § 907.5(1)(c) (including "employment circumstances" in factors court must consider). The court referenced Trent's unpaid fines—apparently stemming from a number of cases,

some several years old—as part of its determination whether a deferred judgment or suspended sentence furthered the goals of rehabilitation and deterrence. The court did not suspend Trent's sentence and then order her to jail because she could not pay the fine associated with her present conviction. Nor does *Snyder* suggest that any consideration of unpaid fines in determining a defendant's sentence violates the defendant's equal protection rights. 203 N.W.2d at 291 ("It is recognized that the state has a valid interest in punishing an individual who cannot pay his fine."). "[I]f a wrongdoer were insulated from punishment because of indigency, equal protection would be denied the offender who is punished." *Id.* (citing *Williams v. Illinois*, 399 U.S. 235, 291 (1970)).

This is not a case, as Trent contends, that the court decided "only a person with regular employment, secure income and access to funds, can avoid the possibility of prison or an increase prison sentence." The court considered factors that are within its discretion—Trent's employment circumstances and history of unpaid fines—in reaching the ultimate decision what sentence would best further the goals of rehabilitation and deterrence. The court did not abuse its discretion by considering improper factors in imposing Trent's sentence.

**II. Amount of Victim Restitution.** Trent maintains the court erred in ordering victim restitution. *See State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998) ("Our review of a restitution order is for correction of errors at law.").

"As a general rule, restitution depends on the existence of a crime for which the offender was convicted." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001). "Any damages that are causally related to the criminal activities may be included in the restitution order," but "[d]amages not causally related to the crime

are improper." *Id.* "In calculating a restitution order, the district court must find a causal connection between the *established criminal act* and the injuries to the victim." *Id.* at 167 (emphasis added).

Trent was charged with and pled guilty to one count of forgery. The factual basis for that crime was that Trent had possession of check number 1111, which belonged to a local woman, and that Trent wrote the check for $21.17 at a local gas station. Trent did not plead guilty to any other counts of forgery, and the State did not establish any other criminal acts by Trent. While defense counsel noted, "My understanding is there's going to be some substantial restitution requested," the parties did not stipulate on the record at the plea hearing that Trent agreed to pay restitution for any checks in addition to check number 1111.[2] But the State

---

[2] During the plea colloquy, defense counsel noted, and the State confirmed that Trent had another charge pending (AGIN015642). It is unclear whether that charge is related to the present case; it was not included in any plea agreement involved here.

Additionally, the court asked Trent to explain what she did on December 31, 2017, that brought about the forgery charge, Trent began to explain that she "used a check that wasn't [hers] and used it at Walmart to purchase stuff." Then the following exchange occurred:

THE COURT: Well, I don't understand, Ms. Trent. I'm looking at the Minutes of Testimony to see whose check you forged, and I don't see anything in here about Walmart. Do you need time to talk with your attorney?

TRENT: It was Casey's.

THE COURT: Okay. Counsel, I'm confused. She has admitted to forging a check at . . . . She has admitted to forging a check at Walmart. Is she pleading guilty to another case, or is she pleading guilty to forging a check at some other place?

DEFENSE ATTORNEY Your Honor, this is the check at Casey's. She had another in something that wasn't filed. So I think she has confused the two. But this is the one from Casey's.

THE COURT: Okay. Let's start this all over again then, ma'am. You told me you forged a check at Walmart. Now, that may be another matter that is going to be filed. But I want to know what you did on or about December 31, 2017, here in South Lee County

requested, and the district court ordered, restitution for other checks, including a $35 check to the local gas station, a check for $47.65 to the local food mart, and a check for $1465.26 to Wal-Mart. Because the court ordered $1547.91 of victim restitution not causally linked to Trent's established criminal act, we vacate that portion of the sentence and remand for the district court to enter an order consistent with this opinion.

**SENTENCE AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

that brought about the filing of this particular charge to which you are pleading guilty.