**IN THE COURT OF APPEALS OF IOWA**

No. 23-0788
Filed April 10, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**VALON JACKSON JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.


        Valon Jackson Jr. appeals the restitution order and sentences entered after his convictions. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Valon Jackson Jr. appeals the restitution order and sentences entered after his convictions for second-degree arson, first-degree criminal mischief, and third-degree burglary. He contends the State did not meet its burden in establishing the restitution amount and that the district court abused its sentencing discretion by failing to consider certain mitigating factors. Upon our review, we affirm.

## I.    *Background Facts and Proceedings.*

In the early morning of August 22, 2021, the Sioux City Fire Department responded to a fire at an after-hours nightclub where patrons could pay a cover fee to hang out after the bars closed. Local law enforcement had been concerned about the club for some time because it had become a hotbed for criminal activity, including "murders, shootings, [and] drug activity."

The fire department put out the fire and discovered the remnants of three improvised incendiary devices.[1] After reviewing surveillance footage and investigating the scene, the fire department concluded "that the fire was intentionally set for the purpose of causing property damage."

The next day, Jackson confessed to the arson. He detailed to law enforcement "why he placed the incendiary devices where he did, how he put the incendiary devices together, where he gained his training or experiences with similar devices" and explained he started the fire with good intentions. Jackson

---

[1] Improvised incendiary devices are also commonly referred to as a "Molotov cocktail," which is "comprised of a glass bottleneck and a cloth 'wick.'" *See State v. Vaughan*, 859 N.W.2d 492, 495 (Iowa 2015).

felt law enforcement was not doing enough to quell the criminal activity and burned the building to shut the business down.

Jackson was charged with second-degree arson, first-degree criminal mischief, and third-degree burglary. The proceedings were suspended for several months to evaluate Jackson's competency. After the court determined that he was competent to stand trial, a bench trial was held in February 2023. After hearing testimony about the fire and the resulting property damage, the court convicted Jackson as charged. The court sentenced Jackson as a habitual offender to an indeterminate term of incarceration not to exceed fifteen years for each count with a three-year mandatory minimum. The court ordered the sentences to run concurrently. It also ordered Jackson to pay $183,035.49 in restitution to the building's owner. He appeals his sentence, challenging the restitution award and arguing that the court abused its sentencing discretion.

## II.    *Substantial Evidence Supporting Restitution Award.*

Jackson first challenges the restitution, arguing that the evidence does not support the amount awarded. The Iowa Code provides that when a defendant is found guilty, the court "shall order that pecuniary damages be paid by each offender to the victims of the offender's criminal activities." Iowa Code § 910.2(1)(a) (2023). "Pecuniary damages" are those recoverable in a civil action that are "not paid by an insurer." *Id.* § 910.1(6). The State bears the burden to establish the amount of damages and the court must "determine whether the court's findings lack substantial evidentiary support." *State v. Roache*, 920 N.W.2d 93, 99–101 (Iowa 2018) (cleaned up) (citation omitted). Our review is for correction of errors at law, and we will affirm the award "if it is within a

reasonable range of the evidence." *State v. Watts*, 587 N.W.2d 750, 751–52 (Iowa 1998).

At trial, the State introduced two forms of evidence calculating the property damage. The first was an exhibit provided by the insurance company that broke down the losses incurred. Because the nightclub was so damaged that it required demolition, the list of losses included the replacement value of the building ($259,349.00), the cost of cleaning repairs to the neighboring building ($8806.49), demolition costs ($28,280.00), and lost rental income ($6600.00), for a total loss of $303,035.49. The second form of evidence concerning damages was the building owner's testimony, in which he verified that the insurance company did an assessment and concluded the building needed demolition because the damage was too extensive. The building owner also confirmed the itemized amount for each category of damage and that he had received approximately $120,000 from the insurance company. Based on the evidence, the court concluded that the restitution amount was $183,035.49, the total damage assessment minus the insurance payout. *See* Iowa Code § 910.1(6) (excluding damages covered by insurance proceeds from pecuniary damages).

Jackson relies on *State v. Bonstetter* and claims the State did not meet its burden in establishing the damages because additional testimony was needed. 637 N.W.2d 161, 170 (Iowa 2001) (reversing a restitution order for lack of substantial evidence). But in *Bonstetter*, the court concluded that a bill from a third-party alone is not enough to prove costs "are necessary, fair, and reasonable." *Id.* The State here provided both the exhibit itself and the building owner's testimony. The testimony corroborates the figures from the exhibit and

confirmed the insurance payout. We afford the district court "broad discretion in determining the amount of restitution when the record contains proof of a reasonable basis from which the amount may be inferred." *State v. Shears*, 920 N.W.2d 527, 530 (Iowa 2018). Because the restitution amount is "supported by substantial evidence," we affirm. *See id.*

### III.    Alleged Abuse of Sentencing Discretion.

Jackson next argues the district court abused its sentencing discretion by failing to consider mitigating factors and declining to suspend incarceration in favor of probation. When sentencing, the court "has broad discretion to impose the sentence it determines is best suited to rehabilitate a defendant and protect society." *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022). This discretion "to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor" and we will only reverse for an abuse of such discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). An abuse of discretion occurs when "the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable." *Id.* Due to the discretionary nature of sentencing, consideration of proper factors and the goals of sentencing "will not always lead to the same sentence." *Id.* at 725. In making its sentencing decision, the court referenced several factors to "provide maximum opportunity for the rehabilitation of the defendant and protection of the community from further offenses," including "the defendant's age, the defendant's prior record, the nature of the offense committed, the contents of the presentence investigation report, and the financial condition of the defendant." These are nearly identical to the statutory factors and are proper for the court to consider when sentencing. *See* Iowa Code § 907.5(1).

Jackson argues that he had "strong familial supports in the community" and manageable mental-health symptoms, and that the court "ignored" these considerations. But the record shows the contrary. The sentencing court *expressly* considered these factors despite not being "required to specifically acknowledge each claim of mitigation urged by [the] defendant." *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). In fact, the court discussed these factors at length when sentencing Jackson:

> The court does not believe that the crimes as they were committed in this instance were impulsive or rash. . . .
> The acts that occurred required advanced planning and required changes in the plan over the course of the commission of the offense. The materials had to be gathered. The devices had to be assembled. The defendant was at the club earlier, came back, someone there, he left again, came back, retrieved the devices and entered through a back door. Those things to me are not indicative of impulsive or rash behavior.
> . . . And I think, more importantly, an act for which even if the motivations behind it were somehow related to mental health concerns, the opportunities to pause and not continue with the course of action were many and there was many points in time when the defendant could have changed his mind and stopped moving forward the way he had.
> . . . .
> All of that said, the court does find that there was some role of mental health in these offenses, and I've struggled a little bit about how to address that and how to work that into my sentencing considerations. But had this been something that truly was an impulsive or rash act that had some direct causal relationship to the mental illness or more direct causal relationship, I maybe [would] have been more receptive to an idea of probation. But in this instance, for the reasons I've already stated but also because of the dangerousness of the act itself . . . . that deserves some punishment. . . .
> . . . You've previously served a prison sentence. You've previously been on supervision and probation, and that has not appeared to resolve the issues. You've had supervision in the community through mental health committals with regard to your mental health, and that did not resolve the issues.

The court weighed the evidence related to Jackson's mental health against the severity of the offense itself. Jackson fails to explain how the court's determination is somehow "untenable or unreasonable." *See Formaro*, 638 N.W.2d at 724. Because the court considered only permissible factors when making its sentencing decision, it did not abuse its discretion.

### IV.    *Disposition.*

Because we find that substantial evidence supports the restitution award and the sentencing court did not abuse its discretion, we affirm.

**AFFIRMED.**